In re Milton SCHRAIBER, Debtor.

Alexander S. KNOPFLER, Trustee for Milton Schraiber, Plaintiff,

v.

Milton SCHRAIBER, et al., Defendants.

Bankruptcy No. 87 B 17144.
Adv. No. 88 A 877.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 17, 1989.

Mark L. Prager, Bruce Dopke, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for trustee.

Mark A. Spadoro, Chicago, Ill., for Superior Bank.

Hall Triplett, Chicago, Ill., for cross-claimants.

John H. Redfield, Chicago, Ill., for cross-defendants.

## MEMORANDUM OPINION ON CROSS–DEFENDANT'S MOTION TO DISMISS CROSS–COMPLAINT

JACK B. SCHMETTERER,
Bankruptcy Judge.

Alexander Knopfler, trustee for the bankruptcy estate of Milton Schraiber ("Debtor"), filed herein his Adversary Complaint which names as defendants those parties who claim an interest in the Oak Mill Shopping Center ("the Mall"). Count 1 seeks a declaration that Debtor owned the Mall through certain entities which were merely his alter ego. It seeks authority for Trustee to sell the Mall on behalf of the bankruptcy estate. Should the Court find that Oak Mill Shopping Center Associates ("OMSCA") and/or Oak Mill Associates ("OMA") are bona fide partnerships which have ownership interests in the Mall, Count 56 seeks to wind up affairs of these partnerships and have Debtor's share distributed to the estate. *See Alexander Knopfler, Trustee v. Milton Schraiber,* mem. op. (Bankr.N.D.Ill. May 23, 1989) (Denying Motion to Dismiss Count 56).

Certain defendants who assert they are partners in OMSCA ("Cross–Claimants")[1] have filed a cross-claim against Betty Schraiber (Debtor's wife), Steven Schraiber (Debtor's son), and Irene Thon (Debtor's secretary) (collectively "Cross–Defendants"). They seek a declaration that OMSCA is the rightful owner of the entire Mall and that OMA is a fictitious entity. The cross-claim also seeks a declaration that Cross–Defendants do not own capital interests in OMSCA.[2]

Cross–Defendants plus Marc Schraiber (Debtor's son) and Randi Kanter (Debtor's daughter) have moved to dismiss the cross-claim on various grounds, including the failure to join certain parties that Cross–Defendants assert are indispensable under Federal Rule of Civil Procedure 19.[3] Specifically, the cross-claim does not join Marc Schraiber or Randi Kanter, each of whom claim to be a partner in OMSCA, nor does it join Trustee. Marc Schraiber and Randi Kanter were joined by Trustee as defendants to the Adversary Complaint, and are thus parties to this case. However, although they join in the motion of Cross–Defendants they have not sought to intervene as parties to the cross-claim.

### INDISPENSABLE PARTIES UNDER RULE 19

Cross–Claimants respond to Cross–Defendants' motion by broadly asserting that "a plaintiff may choose the persons whom he will sue." Cross–Claimants' Br. at 6. This of course is an overstatement. A plaintiff's right to decide who to pursue in a lawsuit is subject to possible interests of other parties and the public's interest "in avoiding repeated lawsuits on the same essential subject matter." *Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1115 (7th Cir.1969) (quoting Ad-

---

**1.** Cross-claimants include Isabelle Gaik, Fred Groh, Irene Maczka, Patrick Maize, Evelyn Rydzon, Lois Schmitt and OMSCA.

**2.** This court has previously held that Trustee's count 56 is a proceeding "related to" Debtor's bankruptcy case within 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(c)(1) because the outcome of the dispute will determine the value and extent of the Estate's interest in OMSCA and OMA. *Alexander S. Knopfler, Trustee v. Milton Schraiber,* No. 88 A 877 mem. op. at 7 (Bankr.N.D.Ill. May 23, 1989). *See also Alexander S. Knopfler, Trustee v. Milton Schraiber,* No. 89 C 6181 mem. op. at 2 (N.D.Ill. Oct. 23, 1989). The cross-claim raises similar issues regarding ownership of the

Mall and the composition of the entities involved and will therefore also impact the value of Debtor's estate. As such, absent consent of the parties, this court may enter proposed findings of fact and law that are subject to de novo review by the district court. 28 U.S.C. § 157(c)(1). Cross–Claimants have consented to this court entering final orders pursuant to 28 U.S.C. § 157(c)(2), but Cross–Defendants have not yet filed an answer to the cross-claim.

**3.** Federal Rule of Civil Procedure 19 with some modification not here pertinent is adopted by Bankruptcy Rule 7019 for adversary proceedings.

visory Committee Notes to Rule 19). *See* 7 Wright, Miller & Kane, *Federal Practice and Procedure* § 1601 at 18. These countervailing interests of other parties are protected by Rule 19 F.R.Civ.P. (Bankr.R. 7019) which governs joinder of parties needed for adjudication. The purpose of that Rule is to protect interests of parties already before the court, absent parties, and the public from multiple litigation and the possibility of inconsistent judicial determinations. *Evergreen Park*, 417 F.2d at 1115; 7 *Federal Practice* § 1602 at 21.

■ The application of Rule 19 closely follows its structure.[4] It must first be determined whether the party who is not joined is a person described in either of the two subsections of part (a) of the Rule. *Evergreen Park*, 417 F.2d at 1115. Specifically, the question is whether failure to join the omitted party prevents the court from rendering complete relief, or alternatively whether the absent party is so situated that the failure to join him or her will impair that party's interest or expose the named parties to the risk of multiple and potentially inconsistent adjudications. If either of these situations exist, the absent party must be joined if feasible. If joinder is not feasible, the court must determine whether in equity and good conscience it should proceed without this party by analyzing the factors enumerated in part (b) of the Rule (see fn. 3). Only if the court then determines that it should not proceed is the party deemed indispensable and the Complaint dismissed.

### A. *The Trustee and Lyons Bank*

■ The Trustee and Lyons Savings Bank must be joined under requirements of Rule 19. Count I of Trustee's Complaint seeks declaratory judgment that the trust which holds nominal title to the Mall is the alter ego of Debtor and that in effect the Mall was owned outright by Debtor and is now property of the Debtor's bankruptcy estate under § 541. Cross–Claimants specifically ask this court to "declare and adjudge that OMSCA is the rightful owner of Oak Mill Shopping Center." To grant Cross–Claimants' requested relief therefore would also implicitly resolve the issues in Trustee's Count I.

A very similar issue was raised earlier in this proceeding. Lyons Savings Bank ("Lyons"), a party asserting that it held a secured interest in the Mall, claimed that it was improperly joined in the Trustee's complaint. The Court rejected this claim, reasoning that Lyons was indispensable because the estate's interest in the property could not be fully determined without resolving the extent and nature of Lyons' lien on such property. *Knopfler, Trustee v. Milton Schraiber*, 97 B.R. 937, 942 (Bankr. N.D.Ill.1989). The Court explained that:

> [It] must join a party to a suit where the rights of the parties to the suit cannot be fully adjudicated without a determination

---

**4.** Rule 19 provides in pertinent part:

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if—

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party....

(b) If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

of the joined party's interest in the subject matter of the cause. 3A J. Moore, *Moore's Federal Practice* ¶ 19.01–1[1], p. 19–17 and 19–19 (2d ed. 1987)....

[A]s a party holding a secured interest in the subject property, it is a necessary party to Count 1 which seeks to adjudicate ownership of that property and the nature and amount of liens thereon. It is thus inconceivable that the court could grant complete relief to the Trustee absent Lyons' joinder in this proceeding.

This same reasoning is equally applicable to Cross–Claimants' efforts to have OMSCA's ownership of the Mall adjudicated without joining Trustee, who claims that the estate owns the Mall, as a defendant. Trustee is therefore a party described in Rule 19(a). For these same reasons, Lyons should also be joined as a defendant in the cross-claim.

There is no reason why joinder of Trustee and Lyons as defendants in the cross-claim is not feasible. They are already parties in this case. Therefore they must both be joined for the cross-claim to proceed, and Cross–Claimants are by separate order granted time to do this. *See Federal Practice* § 1604 at 64 ("Once it has been decided that a person whose joinder is feasible should be brought into the action, the claimant should be given a reasonable opportunity to add that person."). Accordingly, it is not necessary to consider the factors under Rule 19(b). Since trial of the case is imminent and the issues presented by the cross-claim are not new to the parties, the reasonable time to join those parties and for them to answer must necessarily be short.

### B. *The Unnamed OMSCA Partners*

The second issue is whether Marc Schraiber and Randi Kanter, the son and daughter of Debtor and Betty Schraiber respectively, (collectively "the Unnamed OMSCA Partners") are indispensable parties. Although the present cross-claim is not formally broken into separate Counts, it does request different forms of relief. It seeks in part a declaratory judgment that Betty Schraiber, Steven Schraiber, and Irene Thon have no capital interests in OMSCA.

In addition, it seeks declaratory judgment that OMA is a fictitious entity and that OMSCA is "the rightful owner" of 100% of the Mall. It does not seek to resolve whether Marc Schraiber or Randi Kanter own capital interests in OMSCA, does not question their assertions with respect thereto, and does not join them as parties. Therefore the issues to be decided on the instant motion are whether Marc Schraiber and Randi Kanter are indispensable parties to the resolution of both the status of Cross–Defendants as partners in OMSCA and OMSCA's ownership of the Mall. If such parties are persons described in Rule 19(a), that would raise the further question whether joinder of Kanter and Marc Schraiber would require disqualification of Hall Triplett, counsel for Cross–Claimants, due to his prior representation of Kanter and Marc Schraiber.

The Supreme Court has emphasized that Rule 19 must be applied pragmatically based on the facts of each case. *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 107, 114, 88 S.Ct. 733, 740, 19 L.Ed.2d 936 (1968). That instruction is particularly appropriate to this proceeding.

As previously discussed, Rule 19(a)(2)(i) provides that a person shall be joined if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that interest." In *Evergreen Park*, the Seventh Circuit explained that the impairment referred to does not require that principles of res judicata or collateral estoppel be applicable, but refers more broadly to practical prejudice. 417 F.2d at 1115. In lawsuits by partners involving transactions impacting their partnership, practical prejudice has been consistently construed to include the stare decisis effect that a decision in a suit by some partners would have on other unnamed partners who might later litigate the same issue. *See Gottlieb v. Vaicek*, 69 F.R.D. 672, 676 (N.D.Ill.1975) *aff'd without opinion*, 544 F.2d 523 (7th Cir.1976) (court explained

that the stare decisis effect of two limited partners' lawsuit on unnamed limited partner has been held to be a sufficient practical impairment to make the unnamed partner a person described in Rule 19(a)). *See also Hagstrom v. Breutman*, 572 F.Supp. 692, 702 (N.D.Ill.1983) ("where several limited partners bring an action against the partnership's general partner, the other limited partners are indispensable parties."); *Harrell & Sumner Contracting v. Peabody Peterson Co.*, 546 F.2d 1227, 1229 (5th Cir.1977) ("[f]ederal courts have held that in an action on a partnership contract, all members of the partnership are indispensable parties plaintiff."); *Hanna Mining Co. v. Minnesota Power & Light Co.*, 573 F.Supp. 1395, 1399 (D.Minn. 1983), *aff'd on other grounds*, 739 F.2d 1368 (8th Cir.1984).

The case in this jurisdiction most on point is *Schmidt v. E.N. Maisel & Assoc.*, 105 F.R.D. 157 (N.D.Ill.1985). In *Schmidt*, a limited partnership, B–Y Development, was formed for the purpose of acquiring a shopping center. Subsequent to the acquisition, B–Y's general partner sought authorization to expand the shopping center. This proposal failed to receive the necessary votes from the limited partners. Subsequently a subset of the limited partners and the general partner organized a new limited partnership to undertake the proposed expansion. A B–Y limited partner who opposed the expansion sued the general partner in federal court alleging essentially that the general partner had exceeded its authority under the B–Y partnership agreement and had engaged in self-dealing. The general partner moved to dismiss the complaint on the ground that all B–Y limited partners who voted against the expansion were indispensable partners whose joinder would destroy diversity jurisdiction.

The court had "no trouble concluding that under Rule 19(a), the absent limited partners are necessary parties who should be joined if feasible." Id. at 159 n. 1 (citation omitted). The court then proceeded to analyze the first factor under Rule 19(b) which requires consideration of the prejudice to the unnamed limited partners which would occur if the court proceeded in their absence. The similarity between this factor and the standard under Rule 19(a)(2)(i) has been frequently noted. *See, e.g.*, 7 *Fed.Practice* § 1604 at 40. Indeed, the authority the court relied upon in construing Rule 19(b) primarily addressed Rule 19(a)(2)(i). The *Schmidt* court explained:

> Courts construing [Rule 19] have consistently held that "prejudice" within the meaning of Rule 19 does not require that a judgment have a strict res judicata or collateral estoppel effect vis-a-vis the absent parties; rather the standard is whether "as a practical matter" a judgment in the suit before the court would prejudice the absent parties.

> .     .     .     .     .

> [I]n the present case, the absent limited partners' interest would as a practical matter be prejudiced by a disposition of this suit without their presence. Plaintiff alleges that [B–Y's general partner] has, through certain of its actions in connection with the proposed expansion, violated the partnership agreement and breached its fiduciary obligation. In disposing of this case, the court would be required to interpret the partnership agreement to determine if such action by [the general partner] violated the agreement. *The construction given to the partnership agreement by this court would carry great weight in any subsequent proceedings by the absent limited partners against [the general partner]. As a result, the absent limited partners would as a practical matter be prejudiced by disposition of this action without their presence.*

105 F.R.D. at 160 (citation omitted) (emphasis added).

### 1. Status of Cross–Defendants as OMSCA Partners

Cross–Defendants argue that Kanter and Marc Schraiber are indispensable parties to any adjudication of Cross–Defendants' partnership status in OMSCA. Cross–Claimants respond that because the cross-claim "seeks no relief against [Kanter and Marc Schraiber], it would be ridic-

ulous to name them as cross-defendants." Cross–Claimants' Br. at 6. The reasoning in *Schmidt* and *Gottlieb* demonstrates that this argument is incomplete.

Cross–Claimants presumably seek a declaration that Cross–Defendants do not own capital interests in OMSCA because these alleged interests (assuming OMSCA is found to be a bona fide partnership) would result in the OMSCA partnership assets being divided into more pieces, thereby reducing the value of Cross–Claimants' individual interests. Further, because OMSCA is alleged to be a general partnership, not a limited partnership, a determination that Cross–Defendants are partners in OMSCA might expose other OMSCA partners to potential liability for Cross–Defendants' conduct in the course of partnership business. *Cf. Giles v. Vette*, 263 U.S. 553, 44 S.Ct. 157, 68 L.Ed. 441 (1924). As parties allegedly holding capital interests in OMSCA, and in the absence of the considerations discussed below, Kanter and Marc Schraiber have the same economic incentive as Cross–Claimants. Therefore even though no relief is specifically sought against Kanter and Marc Schraiber, it is theoretically possible that they may later desire an adjudication that Cross–Defendants do not own capital interests in OMSCA. Although as unnamed parties they would not be legally bound by an adjudication that Cross–Defendants do have partnership status, the effect of stare decisis would hinder them. Under *Schmidt* and *Gottlieb* they would undoubtedly be parties described in Rule 19(a).

The actual situation presented in this case, however, is much different. Despite the apparent similarity in economic interests, Kanter and Marc Schraiber for reasons presumably including their family relationship with Cross–Defendants, have made it clear that they do not wish to join Cross–Claimants in the cross action. In fact they are listed with Cross–Defendants in the caption of Cross–Defendants' motion to dismiss. This creates an unusual situation. These two unnamed OMSCA Partners have an economic interest that would typically require their joinder as indispensable parties, but aligned with Cross–Claim-

ants. For personal and family reasons, however, they have joined the Cross–Defendants in the instant motion. Since they are so aligned, it is less clear that they fall within Rule 19(a).

First, they are not needed to render a complete adjudication of Cross–Defendants' partnership status. Second, the prejudice to them or threat of multiple litigation resulting from the adjudication in their absence is not obvious once it is pragmatically recognized that they are not primarily motivated by their economic interest in this specific issue. If Cross–Defendants prevail on the cross-claim then Kanter and Marc Schraiber have shown that they will be satisfied with the outcome of the litigation despite the probable adverse economic impact on the value of their OMSCA interests. They will therefore not desire to relitigate the matter and any prejudice resulting from the stare decisis effect of the decision will be more apparent than real. Alternatively, if Cross–Claimants are successful, Kanter and Marc Schraiber might be dissatisfied, but the source of their dissatisfaction is the unfavorable ruling against their family members, not an injury to the value of their interests in OMSCA which would instead be enhanced. Their personal family concerns and loyalties do not comprise an "interest" requiring joinder within Rule 19(a).

An "interest relating to the subject of the action" that makes an absent person a party needed for a just adjudication must be a legally protected interest. 3A *Moore's* ¶ 19–07[2] at 19–99. Authority specifically addressing whether a family interest is an interest within Rule 19(a) in the circumstances presently before the court is limited and indirect. *Cf. Doe v. Exon*, 416 F.Supp. 716, 719 (D.Neb.1975) (3–Judge Panel) (minor's parents were not persons described in Rule 19(a) in challenge to constitutionality of state statute requiring parental consent before a minor could have an abortion). As discussed, however, the concern addressed by Rule 19 is that a party whose interest might be impaired by a given action must be joined so that he or she can protect that interest. Joinder af-

fords that opportunity and prevents multiple litigation over the interest. The problem of multiple litigation only arises if the absent party has an interest he or she can independently protect.

Kanter and Marc Schraiber are aligned with Cross–Defendants at least in part because of their family relationship with these parties. This motivation, while readily understandable, is typically not recognized for purposes of conferring the right to bring a lawsuit. Relatives cannot sue merely because they want their family members to prevail on a certain point. *See* 13 *Federal Practice* § 3531.9 at 548–49 (noting that the parental exception which does exist to the general rule prohibiting third-party standing is confined to such matters as education where it is reasonable to imply injury to the parents as well as to the children). Rather, some direct injury to the plaintiff individually must be shown. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) ("the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of third parties.")

Although the concept of "injury" for standing purposes has been interpreted very broadly, *See, e.g., United States v. Students Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), when evaluating the prospect of prejudice to an interest within the context of Rule 19, the inquiry is more pragmatic. *See Provident Tradesmens Bank*, 390 U.S. at 115, 88 S.Ct. at 740–41 (court must assess the probability that an absent party would be prejudiced by an adjudication in his or her absence); *Morgan Guaranty Trust Co. of New York v. Martin*, 466 F.2d 593, 598 (7th Cir.1972) (the practical not theoretical risk of multiple liability must be considered in the con-

text of Rule 19); *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 669 (11th Cir.1982) (when determining whether a party is a person described in Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control") (citations omitted). The test is whether as a "practical matter" an adjudication in the party's absence would impair his or her interest. Fed.R.Civ.P. 19(a)(2)(i). The facts and circumstances of this case indicate that the economic interests of Marc Schraiber and Kanter will be essentially the same as those of Cross–Claimants. In no sense are they economically or otherwise prejudiced by being outside of the cross-claim.

The district court has ordered that the Mall be sold. *Alexander Knopfler, Trustee v. Milton Schraiber, et al.*, 89 C 6181 mem. op. (N.D.Ill. October 23, 1989) (order granting motion to sell real property). The order authorizing the sale is stated in the alternative, depending on who is determined to own the Mall. If OMSCA has an ownership interest in the Mall, the Mall is to be sold pursuant to the winding up of OMSCA partnership affairs. Id. at 10. Accordingly, there will not be an ongoing operating business being conducted through OMSCA upon which business decisions would significantly differ. Rather, at stake will be the division of a fixed pool of assets among those adjudged to be OMSCA partners. Cross–Defendants have not explained how an adjudication that Cross–Defendants own capital interests in OMSCA will impact either the winding-up process or Kanter's or Marc Schraiber's OMSCA interests other than to decrease the portion of the assets to which the latter are entitled.[5]

Moreover, Kanter's and Marc Schraiber's present counsel also represents Cross–Defendants. Any arguments they would

---

**5.** This result is not changed by the fact that Steven Schraiber claims to have inherited a partnership interest totalling over half of the value of the capital contributions. Even assuming that "control" would impact the value of OMSCA interests during the winding up period, it is not obvious that even the addition of Steven would create this control. If OMSCA is determined to be a general partnership because no

limited partnership agreement was filed as required by Illinois law, then the general rule in the absence of a contrary agreement is that each partner has an equal vote. Ill.Ann.Stat. ch. 106½ ¶ 37, ¶ 18(e). Under these assumptions even the addition of all three Cross–Defendants as partners plus Kanter and Marc Schraiber would not give the Schraiber family voting control.

raise in support of the position that Cross–Defendants are partners in OMSCA will actually be raised by their counsel in the litigation of the proceeding. Their position in moral support of their relatives will be represented in essentially the same manner as if they were joined. This would not solve the basic problem of disqualification if legally recognizable interests of Kanter and Marc Schraiber were adverse to Cross–Claimants and required their joinder, but that is not the case here.

Accordingly, in view of the practical nature of the inquiry raised by Rule 19, this court holds that Kanter and Marc Schraiber are not parties who need to be joined for a proper adjudication of Cross–Defendants' ownership of capital interests in OMSCA.

2. OMSCA Ownership of the Mall

■ Cross–Defendants also argue that Kanter and Marc Schraiber are indispensable parties to a declaration that OMA is a fictitious entity and that OMSCA is the beneficial owner of 100% of the Mall.

Count I of Trustee's complaint seeks a declaration that Debtor's bankruptcy estate owns 100% of the Mall on the theory that OMA was the mere alter ego of Debtor. Under this theory OMSCA would have no ownership interest in the Mall. Cross–Claimants, the Unnamed OMSCA Partners and Cross–Defendants all oppose this position and all have been joined by Trustee as defendants to his Complaint. These original Defendants all assert that OMSCA has an ownership interest in the Mall, but part company on the size of that interest. As noted, Cross–Claimants contend that OMSCA should be declared the 100% beneficial owner. In contrast, Cross–Defendants assert that OMSCA only indirectly owns 30% of the Mall through its 30% interest in OMA, the alleged 100% owner.

As in the earlier discussion of Cross–Defendants' interest in OMSCA, Kanter and Marc Schraiber's direct economic interest would be best served by a declaration that OMA was a fictitious entity so that their OMSCA interest would entitle them to a

corresponding share of 100% of the proceeds from the sale of the Mall, not 30%.[6] Notwithstanding this incentive, they have in the instant motion aligned themselves with Cross–Defendants. Accordingly, the same pragmatic considerations previously discussed are applicable. If Cross–Defendants prevail on this issue Kanter and Marc Schraiber will be satisfied with the result. Alternatively, if OMSCA is declared the 100% beneficial owner of the Mall making Kanter and Marc Schraiber's OMSCA interests were more valuable, they will not have suffered any injury entitling them to relief. Kanter and Marc Schraiber are therefore not indispensable parties to this or any other portion of the cross-claim.

## FAILURE TO STATE A CLAIM

### 1. Fraud Counts

Cross–Defendants also move to dismiss the cross-claim for asserted failure to state a claim for relief. They argue that through the allegation that OMA is a fictitious entity Cross–Claimants are alleging fraud without adequately alleging facts supporting such a claim.

For Cross–Defendants to prevail on their motion to dismiss, it must clearly appear from the pleadings that Cross–Claimants can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swanson v. Wabash, Inc.,* 577 F.Supp. 1308 (N.D.Ill.1983). The issue is not whether Cross–Claimants will ultimately prevail, but whether Cross–Claimants have pleaded a cause of action sufficient to entitle them to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the Cross–Claimants when reviewing Cross–Defendants' motion to dismiss. *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979);

---

**6.** This is also true for Steven Schraiber and Irene Thon, two of the three named Cross–Defendants, who assert that they own interests in OMSCA, not OMA.

*Westland v. Sero of New Haven, Inc.*, 601 F.Supp. 163, 166 (N.D.Ill.1985).

A complaint asserting common law fraud must allege each of the following elements: (1) a representation or a statement of material fact as opposed to a promise or opinion; (2) the representation must be false; (3) the representation must be known by the party making it to be false; (4) there must be action by the other party in reliance on the truth of the statement; (5) the representation must have been made with the intent to induce the other party to act; and (6) there must be damage resulting from such reliance. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1347 (7th Cir.1983); *Hatherly v. Palos Bank & Trust Co.*, 650 F.Supp. 832, 834 (N.D.Ill.1986).

Closely related to this argument, Cross–Defendants also assert that the cross-claim should be dismissed because it fails to allege facts involved in the alleged misrepresentation with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).[7] Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of this rule is to insure that the defendant may adequately respond to the plaintiff's allegations. *Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 100 F.R.D. 807, 809 (N.D.Ill.1984).

The cross-claim sufficiently alleges each of the necessary elements of a common law fraud action and does so with enough particularity to satisfy Rule 9(b). The cross-claim asserts that (1) the Articles of Limited Partnership for OMSCA (the "Partnership Documents") executed by Cross–Defendants contained "a specific purpose to purchase [the Mall]"; (2) Debtor represented to each Cross–Claimant that he or she was buying part of the Mall; (3) Debtor deliberately failed to disclose OMA's alleged ownership; (4) Cross–Claimants relied upon these representations and executed the Partnership Documents; and

(5) Debtor intended to deceive Cross–Claimants and deliberately failed to disclose the existence of OMA in order to defraud them. Through these allegations, Cross–Claimants have sufficiently alleged reliance on a material misrepresentations and omissions knowingly made by Debtor. While Cross–Claimants have sufficiently alleged a common law fraud action, by focusing on this issue Cross–Defendants have misinterpreted the thrust of the cross-claim. In contrast to a typical fraud action which seeks monetary damages from named defendants, the relief sought in this cross-claim is to have OMA declared a fictitious entity. In support of this position, the cross-claim alleges that (1) OMA is beneficial owner of the trust holding legal title to the Mall and is itself owned by Debtor (35%), Betty Schraiber (35%) and OMSCA (30%); (2) the known capital contributions to OMSCA, an alleged partnership whose primary asset under Cross–Defendants' view is a 30% interest in OMA, was $718,-000, but that Betty Schraiber, an alleged 35% owner in OMA, made substantially less, if any, capital contribution to OMA; (3) the primary evidence of Betty Schraiber's capital interest in OMA is the 35% share of its losses that Betty Schraiber claimed on her tax returns; (4) no bank accounts were opened in OMA's name until after Debtor filed for bankruptcy; and (5) none of the Cross–Claimants, alleged partners in OMSCA, had any knowledge of OMA despite the fact OMSCA's 30% interest in OMA would have been OMSCA's primary asset.

Such allegations and the reasonable inferences drawn from them, if proven, may warrant a finding that OMA was an entity established in name only and should be disregarded as a legal entity owning the Mall. Although there are different theories that Cross–Claimants could develop based on these allegations to support their position, Cross–Claimants essentially argue that OMA was never validly formed. A partnership is "an association of two or

---

7. Both Federal Rule of Civil Procedure 12(b) and 9(b) apply in Adversary proceedings.

Bankruptcy Rules 7009, 7012(b).

more persons to carry on as co-owners a business for profit." Ill.Ann.Stat. ch. 106½, ¶ 6(1) (Smith Hurd 1989). The word "association" requires that the parties voluntarily intended to enter into an agreement. J. Crane & A. Bromberg, *Law of Partnership* 39–43 (1968) ("X cannot become Y's partner without Y's so intending any more than he can without intending it himself.").

Cross–Claimants have alleged that they were never aware of OMA and did not intend to have OMSCA be a partner with Betty Schraiber and Debtor. They further allege that OMSCA was a general partnership, not a limited partnership, because a certificate of limited partnership was not filed as required by Illinois law. Ill.Ann. Stat. ch. 106½ ¶ 152–1. A partner can only bind a partnership to obligations and commitments incurred in the course of partnership business. Id. at ¶ 9(1). Whether Debtor, as an alleged partner in OMSCA, had authority to bind OMSCA to an agreement with himself individually and his wife in the circumstances of this case is one of the many issues that may be resolved at trial. Cross–Defendants' motion to dismiss this portion of the cross-claim is denied.

2. Steven Schraiber's OMSCA Interest

Cross–Defendants also argue that the portion of the cross-claim seeking declaration that Steven Schraiber does not own a capital interest in OMSCA should be dismissed for failure to state a claim. Steven Schraiber asserts that he received a capital interest in OMSCA upon the death of Sheldon Crone pursuant to Crane's will. Cross–Defendants correctly point out that Cross–Claimants incorrectly read the pertinent portion of the Illinois Uniform Partnership Act as stating that a partnership interest passes to the other partners upon the death of a partner. Id. at ¶ 25(2)(d). This provision addresses "specific partnership property", not a partner's capital interest. Id. It is possible for a capital interest to pass by testacy.

Cross–Claimants' allegations, however, are in the alternative. They also assert that there are no probate records indicating that Crone's OMSCA interest passed to Steven Schraiber by testacy. Accordingly, Cross–Defendants' motion to dismiss this portion of the cross-claim must also be denied.

## OTHER ARGUMENTS

Cross–Defendants also correctly point out that under Illinois law a partnership interest can be acquired in methods other than by a capital contribution. Id. at ¶ 27. However, that does not warrant dismissing those portions of the cross-claim which seek a declaration that Cross–Defendants do not own interests in OMSCA. Finally, Cross–Defendants' motion to dismiss the cross-claim on the grounds that it is verbose and conclusory is also denied.